versus Altara N.K. Investments Limited et al. Thanks. All right, Ms. Scanlon, you reserved two minutes for rebuttal, and you can begin whenever you're ready. May it please the Court, Gabriella Menabarreto Scanlon on behalf of Petitioner Appellant Saul Klein. Your Honors, Petitioner's Section 1782 application is the quintessential example of the proper use of the statute. The District Court's opinion must be vacated, as it holds Petitioner's application to a far more restrictive standard than permitted under controlling law. If not reversed, the decision will make getting discovery from clearing houses and banks in the financial capital of the world in the Southern District of New York virtually impossible for foreign applicants. Well, I don't think that's true. If, for example, the facts were different, hypothesize this. Your client in Brazil knows that his adversary in litigation has an account in Citibank's Brazilian affiliate, okay? And there are transfers going out from that account through its affiliate in New York, but to points unknown in dollar-denominated ways. Well, then he would have a reason for going to the clearing house in New York and saying, well, look, I know money flowed through you. I don't know where it went. I want to know where it went. But here you have a Citibank affiliate account in Brazil, but I understand that you don't have, and correct me if I'm wrong, you don't have any indication that money went out towards the U.S. through that account, do you? Not through that account, Your Honor, but we put forward evidence that appellees do not contest one specific evidence that entities in the United States of America purchase assets in the United States of America through relevant period of time. We have- But not necessarily from any accounts in Brazil, right? They happen in the United States, and the clearing houses don't have accounts. Right, but how do you know the money came out of Brazil and into the United States there? You're saying because he was a Brazilian? Your Honor, what petitioner's brother stated to the Brazilian courts repeatedly is that his father did not have assets in the United States. Right, and he lied. He did have assets in the United States. But I guess now you're trying to figure out, I mean, you go to the clearing house to basically say, look, I don't know where this money came from, I don't know where it came from, I just want to know, you got these assets in the United States, I want to know, I mean, maybe they came from Brazil, maybe they came from Switzerland, who knows where they came from, right? But Your Honor, here, the record shows that, again, we have an investigation conducted from someone who was a law enforcement agent for 32 years. That person listed from public records specific transactions from 19 Delaware and corporate entities associated with petitioner's brother and his family during a timeframe only in five months, $310 million during October 2014, a month before his father died, and a day after the memorandum of understanding is signed with his brother. But there's no evidence that that went into the United States, right? Is there any evidence that that $310 million went into the United States? Yes, it happens here in the United States. I'm sorry, just to clarify, I think the question is, did it pass into the United States? Not was the money already in the United States and then moved around? I thought that was the question, maybe not. Yeah. Did it cross the border? Well, Your Honors, the money, the transactions happen in the United States. Yeah, but maybe it's been in the United States for 100 years or 50 years, right? But Your Honor, the fact that his brother represented, his brother is the estate executor. Yeah, let's assume it's a lie. My question is, but the lie was, are there assets in the United States? So the question is, what is your basis for saying that the money moved from Brazil to the United States in whatever this period was, as opposed to, you know, he had been hiding money in the United States for 50 years. What is the basis for believing it's one or the other? Your Honor, we put forward a lot of evidence that showed that between 2009, when Petitioner left the company and his brother had full control of the company and also when the first will of Mr. Samuel Klein was executed with $2.1 billion, with billion reais in assets. And then in 2013, there is a second will that decreased significantly the assets of Mr. Samuel Klein. During that time, Petitioner was out of the company. And during that time, there is a number of holding companies in Panama, in Cayman, in New Zealand. A lot of transfers and corporate transfers happening during that time. Can you just take a step back for me? I want to go back to what was said before the district court. When the district court inquired, trying to determine whether this was a phishing expedition or not, other than this Exhibit 11, which showed some transactions involving, I guess, Safra and Citibank, at least Brazilian affiliates. So that's two banks. The district court asked, what's the basis for these other banks? What's the link? And is there anything in the record that links any of these banks to this controversy? No, Your Honor. And then the district court says, you could have chosen a hundred more and you'd have no less evidence as to them, right? And the answer is, right. So putting aside the clearing houses and those two banks, there were multiple other banks. To this day, maybe you can answer me. For example, JPMorgan Chase. Why was JPMorgan Chase on the list? What was the basis for thinking that JPMorgan Chase was the source of these transactions? Because Your Honor, transactions in United States dollars happened here. I know, but that could be any bank, right? Why was JPMorgan Bank picked as opposed to some other bank? The list of cases that I briefed here, the 19 cases, including, let's look at the Iraq telecom case, where counsel here for Apple East with the counsel for petitioner there. On their application, they don't mention why they're petitioning, why this bank and why this bank. Is that a district court case? That is a district court case. So maybe that was wrong. Yes, but so all... Maybe if that had come to us, we would have said, what are you, what are you, what are you kidding? So how about talk about our precedent, something that's binding rather than what some other district court, maybe if they were more forgiving in their standard. But Your Honors, the line of cases here, number one, we're looking for third party documents. These are not the same documents that even Mr. Michel Klein holds. And the Exhibit 11 that we're talking about here and the district court inquiry, that Exhibit 11 is what Michel offered to the Brazilian courts. Can I go back to Judge Bianco's question, because I don't think I heard a good answer, which was, he asked, is there any particular reason to believe these other banks had any documents? I thought the answer presented to the district court was no. And then I guess I thought the question on the table is, could you have easily, just as with equal justification, expanded your subpoena to another hundred American banks? So I think the question is yes or no. Your Honors, the question could have been yes, but here, the link is important. That Exhibit 11, that income statement shows two banks. This is exactly, when we have transactions in U.S. dollars. If you limited it to those two banks, maybe you have an argument. This wasn't a fishing expedition. We didn't have evidence that, but at least they're affiliated, but that wasn't what was done here. It looks to me, a bunch of random other big banks were put on the list, and the district court concluded, this is a fishing expedition. So why is that an abuse of discretion? And I'm waiting for the answer of why those other banks were on there, and there is no answer for why those other banks were on there. But Your Honors, the transactions in U.S. dollars, the clearinghouses, they don't hold bank accounts. They do not hold. I'm not talking about the clearinghouses. I'm talking about the decision that was made to just place some random big banks on the request. It is not a fishing expedition, Your Honor, because all of the cases that the district court and their brief sites points to cases when the petitioner comes here, he has no idea of any assets that their target has, and he casts an asset, I want to know the  Here is different. He casts an asset with put forward evidence not contested at once. Can I ask you a different question then? In your view, in every case where someone overseas knows there are assets in America, can they therefore subpoena every bank in the United States to say, look, somehow they got to America, I don't know through which bank, the only way I can find out is by hitting all the banks, and maybe I will start with the 20 biggest, and then if they come up dry, I'll go to the next 50 biggest and work their way down. Is that accurate? No, Your Honor, here, because we have high relevance, low burden. We have a high relevance and low burden. We're talking about fraud, Your Honors. The fraud does not start with a conclusion. Here, what the district court wanted is a conclusion. And no, for all, yes, the district court wants a specific What conclusion was the district court looking for? The district court is looking for a specific American bank. I did, as counsel representing petitioner on that day, exactly what counsel here did on the Iraqi Telecom case. Because HSBC in Asia has a corresponding bank in the United States, and because transactions happen in U.S. dollars, they may have been cleared through that bank. As you responded to Judge Bianco, when you were asked about the reasons for choosing the specific bank, you didn't really have any. Well, what about the transactions, Your Honors? We showed, we put forward all of that evidence. And in fact, his brother keeps representing and has full control that no assets outside of Brazil happened. Let me ask you this. Existed. Suppose the district court judge looked at the scope of your request, and it's, you know, 12 financial institutions, 26 entities, 11 year period, and said, I just think that's too broad, too unfocused. I'm not going to put these banks through this exercise without, on the basis of ledger. Would that be an abuse of discretion? Your Honor, the circuit in Mies, for example, it is preferable to tailor their discovery than deny it. And here, we put forward evidence. In the case— How did you explain the tailoring you did? Okay. I'm going to cite for a case here, including a— I didn't ask about a case. I asked you to explain what you did to tailor.  Let's look in the recent Bukalova case. Sorry. Here, if we look in the recent Bukalova case, a case just decided by the jury house— I'm not asking about cases. I don't want you to explain. No, I want to give you an example of how the— I can read cases. Okay. But I want, please, your help on the question I ask you. I'm sorry, Your Honor. Okay. Here, we have 26 entities. 19 entities are Delaware Incorporated entities, and 6 entities are Cayman-related entities. Only 2 of those entities are in Brazil. So, we have a request with 26 target entities in the subpoena for a time period of 10 years. The proper way to tailor is, okay, why don't we tailor for the transactions that we saw between October 2014 and March 2015? Your Honor, when the district court asked the questions and established, I think, that there was no basis for putting all of these banks in here, there was never a suggestion to the judge, judge, just give us X. We just want the clearinghouses. We just want the clearinghouses. Forget about all the other things. There was never any suggestion before the district court that the requests would be narrowed, was there? I, Your Honor, on the transcript with Judge Engelmeyer, I said, but Your Honor, the clearinghouses have records of these transactions. And he says the clearinghouses have it all. He didn't give me a chance to work on tailoring the request at all.  And I said that they were outside of the Brazilian jurisdictions, specifically the entities.  Thank you, Ms. Scanlon. We understand. There's two minutes for rebuttal that you reserved, and we'll hear from Mr. Adams. Thank you, Your Honor, and may it please the Court, William Adams for the appellees. The district court was well within its discretion to deny Saul Klein's Section 1782 petition, which stood out to the experienced district court judge as especially lacking in any factual basis. And I think that, frankly, has been confirmed here this morning. As the district court found, this is the archetypal fishing expedition. As the district court concluded, there is no non-speculative basis for the subpoena. And this was confirmed for two reasons, both of which I think the panels hit on this morning already. First, the amazing breadth of the subpoenas, which seek all documents from 12 financial institutions relating to 26 target entities over a 10-year period. There was absolutely no effort to tailor or to narrow that request before the district court, and for good reason, because it's a fishing expedition. There's no logical, reasonable, rational way in which they could target and further define the scope of the subpoenas. And second, the reason that the district court relied on below was counsel's very candid concessions that the subpoenas lacked any factual basis to the targeted entities. Counsel conceded, as we talked about, that Exhibit 11, only a single tax return of Samuel, provided a supposed link to any target bank, but that doesn't provide any basis to seek records with respect to 26 different entities from other members of the Klein family. And as was pointed out in Colloquy earlier as well, the counsel conceded that Saul could have chosen 100 different banks, and there would be no less evidence connecting them to the foreign proceedings. But what about the clearinghouses? I know it wasn't limited to the clearinghouses, but assume it was just, we just want to see, we don't know, we have some reason to believe these transactions occurred in the United States. We want to check the clearinghouses. Would that have been okay or not? It would not have been okay in this particular case, Your Honor, because first, as you noted, there was no request to narrow it and to limit it to just those two targets. And second, in any event, to conclude that the district court abused its discretion, it's obviously abuse of discretion review here, would mean that an applicant could go to chips in the Fed anytime there's a possibility of a U.S. banking transaction that might have any bearing on a foreign litigation. That's simply not the rule, and would open, frankly, the floodgates to just the type of phishing expedition that the district court tried and rightfully stopped in this instance. It almost would be, the chips in the Fed would be the first stop for any foreign litigant in that circumstance, and that's simply not an abuse of discretion to say that that could be and was a vehicle for potential harassment on the facts here. If your opponent, in the course of whatever Brazilian proceedings may be going on or might happen in the future, were to come upon any bank record showing a transfer, let's say from Citibank's Brazilian affiliate to their American affiliate, would you agree that in that case they could file a renewed 1782 to Citibank in America for basically all the records that they just asked? I certainly couldn't stop them from filing a new petition, your honor. Nobody can stop anybody from asking. I'm saying, wouldn't they be entitled to get it? I don't think necessarily, your honor, because Intel Factor 1 looks at whether the documents and the evidence are available in the foreign litigation, and if they have found, I mean, the concern here is that money... How would the records of Citibank in America be available in a Brazilian litigation? The concern here, your honor, is that... Could you tell me? Sure. How would they be available in Brazilian litigation? How could you get those records from Citibank? Not the records themselves. That's what I was asking. Not the actual same documents, your honor. But I'm referring to the... But how would they? So they wouldn't be available? I'm not disagreeing with you. I'm saying it's about the evidence. So the evidence, their concern is that money and funds improperly left Brazil. There's no evidence, of course, that that happened, that there was any sort of improper transfer, hidden transfer, or any sort of embezzlement. But that's evidence. If it's leaving Brazil, that's going to be available from Brazilian entities, and that can be... And that is... And from Michael in particular, whose companies are listed here. It would show it leaving Brazil to an American Citibank account, but it wouldn't show where it was dispersed from there, would it? No, it would not. No, it would not, your honor. So if they were to come back to the district court with a different record, they could certainly make their application, and it would be subject to the district court's discretion as to whether the intel factors were satisfied in that circumstance. That's not this case, because it's a phishing exhibition. They don't have that evidence. They could seek to develop it in the current Brazilian proceeding, or any sort of subsequent Brazilian proceeding, and if they were able to find it, that may give them a link to come back. They don't have that now, and it's not... Let me just ask you a little bit of a legal question as to when a court concludes that it's a phishing expedition, is that... There was some suggestion that that fits under the undue burden intel factor, but is that really the way to look at it, or is that sort of... The intel factors are not exclusive. Is that type of finding essentially provide a sufficient base for a district court to conclude that they should not get the documents, period? The latter, Your Honor, and I believe this court may affirm simply, and should affirm simply based upon the finding that this is a phishing expedition. The 11th Circuit, in addition... We've never said that, though. You've never said that, but this court has cited favorably the 11th Circuit's decision in Ministry of Legal Affairs, which the district court relied on. This court cited it favorably in the Metal Geschelschaft case, 121 F3rd at 79, saying that where a district court finds that a petition is a vehicle either for harassment or as a phishing expedition, that's an independent basis and a sufficient basis to deny discovery. Even if the bank's not claiming there's some burden in producing the records, right? That's not... Absolutely right. Absolutely, Your Honor. There's no obligation for the bank to come in and say that this is burdensome for us, because the phishing expedition itself can be a vehicle for harassment of the target and family, and that's the potential that the district court was concerned about, and rightly considered in denying the petition. And as Your Honor pointed out, from this court in Keogh Bell, as well as Intel itself, it's made clear that the Intel factors are not to be applied mechanically, and a court must exercise its discretion based upon the twin aims of the statute, and considering all pertinent issues. Here, the district court determined that the lack of a factual basis and the phishing expedition nature of this dispute dwarfed all other considerations. It certainly addressed other Intel factors, you know, factors 1 and 3 in particular, but what drove the decision here was its determination that this was a phishing expedition and that is a potential vehicle for harassment. So if there are no further questions, I'll rest on my briefs with respect to the additional Intel factors and respectfully ask that the court affirm. All right, thank you. Okay, Ms. Scanlon, you have two minutes in rebuttal. Your Honor, again, I urge. This is not a phishing expedition. We put evidence. They don't contest. We talk about the twin aims of the statute to make discovery efficient, fair, and simple as in Edelman stated multiple times through the circuit court. Your opponent, notwithstanding the summary response you just gave, has repeatedly characterized your application as a phishing expedition. Give me your three best reasons as to why this was not a phishing expedition. Thousands and thousands of documents over year after year after year from... Yes, Your Honor. We put forward evidence of the transactions that we want. We want to know when and how. That is not a phishing expedition. It's not casting...  I can't hear you. I'm sorry. Your Honor, I said that we put forward evidence of what we want and there is a relevance, high relevance, and low burden. This is not phishing expedition. The cases, again, it deals with cases when petitioners come here and they want to seek assets to attach to past judgments. This is not this case. We know what we want. There is relevance. Then... If you know what you want, why then did you ask for all documents and information from 12 institutions relating to 26 entities over an 11-year period? That doesn't sound like you know what you want. Your Honors, here the problem is the clearinghouses have all of the transactions in U.S. dollars, but it can't... We could have to tailor the subpoena. That is no problem with that. That is what happened with the Abdala case when first, 93, 93, that was a phishing expedition when you come with 93 in no time frame. Here we're looking for a 10-year period of bank records, bank records that are routinely produced, Your Honor, and these records are not available in Brazil. And what their foreign expert shows in all of their declarations is an exhaustion requirement. They say, go to Brazil and then ask for a regulatory letter to come to the United States. That is exhaustion requirement. That is not the proper... Advancing the aims of the statute is discovery, fair and simple, and also the United States leading by example. In fraud cases, we don't start with a conclusion. That's what the district court wanted. Thank you, Ms. Scanlon. Thank you, Mr. Adams. We'll reserve the decision. Have a good day. Thank you. Thank you both.